Woodward, J.:
In 1895 the plaintiff in this action entered into two contracts with M. Gibbons & Son, by which the latter undertook to construct two warehouses for the former, at an aggregate cost of $151,000. The firm of M. Gibbons & Son originally consisted of Michael Gibbons and Bichard Gibbons, his son, one of the defendants in this action. The buildings were completed about July 2, 1896, and shortly thereafter Michael Gibbons and Bichard Gibbons began an action against the plaintiff in this action to recover the sum of $56,000, the unpaid balance of the contract price for the erection of said buildings. The original complaint claimed a considerable sum for extra work, but this was dropped upon- the trial, and the litigation, after passing successively through the Appellate Division and the Court of Appeals, resulted in a judgment or judgments against the plaintiff aggregating at the time of the commencement of this action, with interest, $79,640.78. Several claimants appearing and demanding this money under assignments or otherwise, the plaintiff brought this action, in the nature of a-bill of interpleader, and has been permitted by the court to deposit the amount to the credit of the action, and has been dismissed from further liability. All of the parties acquiesce in this, and the only questions raiséd by the *579 appeal are in relation to the rights and priorities of the various claimants, the fund not being sufficient to meet all demands.
On the 25th of August, 1896, shortly after the commencement of the action by Michael Gibbons and Bichard Gibbons against the plaintiff in this action, Michael Gibbons died. The complaint in that action alleged that they were copartners, doing business under the firm name of M. Gibbons & Son, and after the death of the father the action was continued in the name of Bichárd Gibbons as surviving member of the firm of M. Gibbons & Son, the judgment being entered in that name and under that designation, and it continued in that form during all of the subsequent history of the case, Michael Gibbons left a last will and testament under date of August 14, 1896, which was duly admitted to probate in October of that year.. The will appointed Bichard Gibbons as executor, who qualified and entered upon the discharge of his duties. The will, among other things, contained the following clause,'upon which several of the claimants rest their demand for a reversal of the judgment. It reads as follows: “ Having heretofore conveyed to my son Bichard .Gibbons all of my interest in the business of M. Gibbons <fe Son, I hereby ratify & confirm such conveyance & bequeath to my said son Bichard Gibbons any interest which it may appear that I may have at the time of my decease in the said business of the firm of M. Gibbons & Son.” ■
It appears from the evidence that the firm of M. Gibbons & Son had, at the time of the death, of Michael Gibbons, a large number of contracts for buildings, which were being performed, and that the firm had already borrowed of various concerns considerable sums of money. Bichard Gibbons, acting in the capacity of surviving member of the firm, and as it was his duty, ho doubt, as executor of the estate in protecting its assets, borrowed other sums of money for the purposes of paying the debts of the firm and completing the contracts which had been entered into in the lifetime of Michael Gibbons, and the principal question to be determined upon this appeal is whether the creditors of the firm and of Bichard Gibbons as surviving member of the firm have a right to be reimbursed out of the fund which has been paid into court under the judgments, in the action of Bichard Gibbons as surviving member of the firm of M. Gibbons & Son, or whether the judgment creditors of Bichard *580 Gibbons, individually, or his subsequent bankruptcy creditors, are entitled to this fund or to priority over such firm creditors. The learned court at Special Term has held, upon what we conceive to be the preponderating evidence of the case, that the fund in court belonged to Bichard Gibbons as surviving member of the firm of M. Gibbons & Son, and that it was subject to the liens created by the several assignments made by the said Bichard Gibbons of portions of the judgment recovered in the action against the plaintiff. The mere recital in the will of the late Michael Gibbons that he had heretofore conveyed his interest in the firm to his son, could not be controlling as against the testimony of the son in harmony with his action that he had made use of the credit and assets of the firm in completing the work which had been contracted for during the lifetime of his father and in discharging the indebtedness of the firm. The verified complaint in the original action, commenced within a few weeks of Michael Gibbons’ death, says that they were copartners; the action was continued in the name of Bichard as surviving member of the firm, and if there was a transfer after the verification of the complaint and before the death of Michael Gibbons, it must have been subject to the equities of the creditors, whose rights could only be protected by the completion of the contracts then under way and for which moneys had been advanced. In other words, any transfer of the partnership property to Bichard Gibbons was subject to the debts of the partnership, and until the contracts then in'existence had been completed and the indebtedness of the firm settled, the rights and equities of the firm creditors were superior to those of the individual creditors of Bichard Gibbons. While it is probably true that if Bichard Gibbons had continued the action in the manner that he did and had recovered this judgment, a court of equity would not permit him to keep it as against his individual creditors, but where there are equities superior to those of the individual creditors it is proper that the fund should be first used to pay the debts which were of the- firm’s creation and which extended, equitably at least, to the debts which were necessarily created in making available the funds which had already, been tied up in the works being carried forward under the original contracts of the firm. In Durant v. Pierson (124 N. Y. 444, 454) the court' reviews the authorities upon the point here involved and say : *581 “ It appears to us that the conclusion is warranted from the authorities referred to that where a person in good faith loans money to a surviving partner, and where the money is faithfully applied by such partner in satisfaction of the liabilities of the firm, the claim becomes .one which in equity should be paid out of the assets of the firm; and in an accounting between the survivor with the personal representative of the deceased partner, equity will recognize the right of the surviving partner to have the money so borrowed and applied by him repaid out of the assets of the firm, and an assignment so directing is not fraudulent.” This is the principle which underlies the action of the learned court at Special Term, and in the Durant Case (supra) it was held that the fact that the deceased partner left a will making the survivor his sole devisee and legatee did not affect the question of the equities of the bank which had loaned the money. (See Bell v. Hepworth, 134 N. Y. 442, 449.)
It does not appear necessary to review each of the several assignments involved in this appeal, for while there are variations in the facts, and some intervening transactions, they will all be found to respond to the principle laid down in the Durant Case (supra) and which accords with our own ideas of the equities here involved. During the lifetime of Michael Gibbons, and about the 8th of June, 1896, the firm of M. Gibbons & Son opened an account with the defendant the National City Bank, and immediately began to borrow money from the -said bank through the discounting either of the firm paper or that of persons indorsed by the firm. On the twenty-fifth day of August, the date of the death of Michael Gibbons, the firm of M. Gibbons & Son was indebted to the bank for a considerable sum of money, and this was increased between the date of the death of Michael Gibbons and the 10th day of July, 1899, at which time ¡Richard Gibbons, as surviving member of the firm of M. Gibbons & Son, made, executed and delivered to the bank an assignment of an interest in the judgment against the plaintiff to' the amount of $37,197. The indebtedness which this assignment was intended to discharge was, by the undisputed evidence, shown to be such as had been contracted during the lifetime of Michael Gibbons, and such was made necessary in completing the outstanding contracts, and making the assets of the firm available. These facts are found by the court, and they are not disputed. On the *582 20th day of April, 1900, an instrument confirming the previous assignment and assigning the cause of action represented by' the said judgment was also executed and delivered to the said bank.
Nearly one year after the first assignment to the National City Bank in July, 1899, and on the 4th day of May, 1900, William Keenan, one of the defendants in this action, recovered a .judgment against Bichard Gibbons individually, and on the 25th day of May, 1900, in proceedings supplementary to execution, the defendant Daniel E. Delavan was appointed receiver of the property and assets of the defendant Bichard Gibbons individually. November 14, 1900, the receivership was extended to the judgment of the appellant Audley Clarke, who urges upon this appeal that the property of the firm of M. Gibbons & Son was vested absolutely in Bichard Gibbons, and that the assignments of the several interests in the judgment which he had executed as the surviving member of the firm while under the injunction of the order in supplementary proceedings were Void. A similar contention is made on the part of the defendant Arthur T. Stoutenburgh, who has been elected a trustee in bankruptcy under proceedings instituted by petition on the 17th day of June, 1900, against Bichard Gibbons, personally.
It seems to us entirely clear that the judgment against the plaintiff never became the property of Bicliard Gibbons except as to what might remain after the discharge of the equitable claims of the creditors of the firm of M. Gibbons ■ & Son, and that Bichard Gibbons, as surviving member of the firm, - was never under any restraint in the proceeding supplementary to execution nor in the bankruptcy proceeding, both of these proceedings being directed aga/inst him personally, and it appears that the fund now in court is not. sufficient to meet all of the claims against the firm of which he was the surviving member. It is equally obvious, if the fund belonged to him in his capacity as surviving member of the firm, that he had an equitable right to make an assignment of a sufficient amount to meet the obligations of the firm, either to the National City Bank or any other creditor, legal or equitable, of M. Gibbons & Son.’ In fact, the entire question here presented is whether the fund now in court belongs to Bichard Gibbons .as surviving member of the firm of M. Gibbons'& Son. If it does, then there can be no doubt as to the correctness of the distribution which has been *583 directed. The survivor of a partnership does not take the assets as a trustee ; he holds the legal title, subject to such equitable rights as the representatives may have to the due application of the assets to the payment of partnership debts, and until these are discharged no one other than the creditors can have any right to the property. ( Williams v. Whedon, 109 N. Y. 333, 338.) “ It is well settled by authority,” say the court in the last-cited case, “ that partners may lawfully make general assignment of their partnership property for the payment of firm debts, and may, in such assignment, make such preferences as they deem just and proper,. and we can see no reason why the death of one of the firm should deprive the survivor, upon whom is devolved the exclusive management of the firm assets, of the right to make a similar disposition of the assets.” (See Russell v. McCall, 141 N. Y. 437, 447, and authorities there cited ; Dodge v. McKechnie, 156 id. 514, 520, and authorities there cited.) In the Williams Case (supra) it was said : “ If the assets in such case are insufficient to pay the firm'debts in full, it is just and proper for the survivors to distribute them in accordance with the principles of justice and equity, and pay one creditor in preference to another, if they deem that equitable,” and that is exactly what has been done in the present case. The survivor has made assignments of interests in the fund now in the hands of the court to pay the debts owed by the firm of M. Gibbons & Son, or which have been contracted by the survivor in completing the contracts of that firm, in order that he inight make the funds of the firm .available for the discharge of its obligations, and the fact that there is not enough to pay all of the creditors does not operate to vitiate the assignments which have been made in the payment of the firm debts. All of the claims which are provided for in the judgment, and which exhaust the fund available for their payment, grow out of claims against the firm of M. Gibbons & Son, or against the individual members of that firm, or the survivor, as such (including legal services necessary to the securing of the fund in suit), and as Bichard Gibbons testified that everything he did after the death of his father was done to wind up the affairs of the old firm, it seems to us that the evidence in support of the proposition that the fund in court belongs to the creditors of the firm is so far conclusive that it ought not to be disturbed on appeal. The learned *584 court at Special Term has, in its decision, given in detail the grounds for the determination in each case, showing the circumstances out of which the assignment grew, and it does not seem necessary to follow them out. The correct principle has been adopted in disposing. of the questions involved, and we find no reason for reversing or modifying the judgment in any respect, the exceptions taken having no material bearing upon the questions involved.
The judgment appealed from should be affirmed, without costs.
Goodrich, P. J., Hirschberg, Jenks and Hooker, JJ., concurred.
Judgment affirmed, without costs.