(94 App. Div. 219.)

LA MONTAGNE et al. v. BANK OF NEW YORK NAT. BANKING ASS'N

(Supreme Court, Appellate Division, First Department. May 6, 1904.)

1. SPECIAL PARTNERSHIP—CONTRIBUTION OF SPECIAL PARTNER—DEPOSIT IN BANK—CERTIFICATE—RECITALS OF CERTIFICATE—DISPOSITION OF SPECIAL FUND—LIABILITY OF BANK.

1 Rev. St. (1st Ed.) p. 764, pt. 2, c. 4, tit. 1, § 4, provided that, on the formation of a special partnership, a certificate should be filed, stating the amount of capital which each special partner should have contributed. Section 8 provided that, if any false statement should be made in such certificate, all persons interested in the partnership should be liable as general partners; and by section 17, as amended by Laws 1857, p. 837, c. 414, any interference by a special partner with money contributed by him was prohibited. On the formation of a special partnership by taking a special partner into a firm, the special partner, in good faith, paid to the general partners the sum which he was to contribute to the partnership, and such sum was deposited in a bank to the credit of the new firm; and the money was subsequently paid to the bank on an overdraft of the old firm, before the filing of the certificate, the fact that it had not been filed being known to the bank. *Held*, that the bank was not liable to the new firm for the deposit on the theory that the disposition of the deposit rendered the certificate false, and the special partner liable.

2. SAME—MISAPPROPRIATION OF FUNDS.

Where a contract between partners and one who was to enter the firm as a special partner required him to contribute a sum in cash, and provided that all the assets of the old firm should become the property of the new one, and the special partner's contribution was deposited in a bank, and then drawn on by the new firm to pay a debt of the old firm to the bank, there was no misappropriation of the funds of the new firm.

3. SAME—PAYMENT OF INDIVIDUAL DEBTS.

The rule that property of a copartnership cannot be employed to discharge individual indebtedness had no application to the case.

4. SAME—BANKS—ACTION BY DEPOSITOR—PLEADING—PAYMENT—EVIDENCE.

Where the members of a special partnership sued a bank to recover a deposit, and the answer alleged payment, the bank could show that the

sum had been paid on a check drawn by the special partnership to balance an indebtedness due by the firm before the entry of the special partner, and that the agreement between the partners was that the new firm should take over all the assets of the old.

Van Brunt, P. J., and Hatch, J., dissenting in part.

Appeal from Judgment on Report of Referee.

Action by Edward La Montagne, Jr., and others against the Bank of New York National Banking Association. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH. McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Wheeler H. Peckham, for appellant.

A. C. Brown, for respondents.

INGRAHAM, J. The facts in this case are stated in the opinion of Mr. Justice HATCH, in which I generally concur. I do not, however, agree with him so far as he holds that any use by the general partners of the capital contributed by the special partners after its actual payment to the general partners, but before filing the certificate, would make the special partner liable as a general partner, or render the statement contained in the certificate, that the contribution of the special partner had been fully paid in cash, untrue. Undoubtedly the truth of the certificate is to be determined as of the time of its being filed with the county clerk, but, if then true, it fulfilled the purpose for which the law was enacted. White v. Eiseman, 134 N. Y. 101, 31 N. E. 276. If at the time the certificate was executed and filed the special partner had actually paid the money to the general partners, so as to part with all control over it, the statute was complied with. Durant v. Abendroth, 69 N. Y. 148, 25 Am. Rep. 158. The certificate which was required to be filed with the county clerk, provided for by section 4 of 1 Rev. St. p. 764, which was in force at the time this partnership was formed, must state the amount of the capital which each special partner shall have contributed to the common stock; and section 8 provides that, if any false statement be made in such certificate, all persons interested in such partnerships shall be liable for all engagements thereof as general partners. The certificate is not required to contain a statement that the amount of capital which the special partners have contributed remains intact in the hands of the general partners at the time the certificate is filed; and where a special partner has in good faith paid to the general partners the money which he is to contribute to the partnership in cash, so that he has no further control over it, and the amount that he has so contributed is correctly stated in the certificate, the statute is complied with, and the special partner is not responsible for any act of the general partners in relation to the money after he has actually paid it to the general partners. Metropolitan Nat. Bank v. Sirret, 97 N. Y. 320. Having once actually and in good faith paid to the general partners the amount of cash which he was to contribute to the partnership, any interference with that money by the special partner is expressly prohibited by the statute, and such an interference would make the special partner liable as a general partner. Section 17

of the Revised Statutes, as amended by chapter 414, p. 837, of the Laws of 1857.

Take a case where the special partner actually paid to the general partners his contribution in cash upon the day that the copartnership articles were executed and the certificate actually signed, and the general partners, in good faith, without the knowledge or consent of the special partner, on the day of its receipt, applied a part of the contribution of the special partner in the purchase of a warehouse in which, or other property with which, to conduct their business, which was to commence on the following day. Such a use by the general partners of the contribution of the special partner would not be a violation of the statute, making the certificate when it was filed on the following day a false certificate, and making the special partner liable as a general partner. And this is, it seems to me, what was done in this case. Prior to the organization of this special partnership, the general partners had been conducting a business in the city of New York. A special partnership was formed to take over that business and to carry it on, and the contribution of capital by the special partner was made for that purpose. On the 22d day of June, 1892, the copartnership articles were executed. They provided that the limited partnership should begin on the 23d day of June, 1892; that the special partner should contribute as his share of the capital of the limited copartnership the sum of $200,000; that the members of the old firm should contribute to the capital stock of such copartnership the sum of $100,000, which should be so contributed by transferring to said limited copartnership all of the property, assets, and good will of the former copartnership of La Montagne, Clarke & Co.; that the old firm covenanted that such property and assets so transferred by them were worth, and within one year would yield in cash, over all the liabilities of the old firm, the sum of $100,000. On that day the certificate required by the statute to be filed was executed, and, at the time these copartnership articles and certificate were executed, the special partner actually paid to the general partners the sum of $200,000. The whole capital of the new firm was to consist of the $200,000 contributed by the special partner, and the assets of the old firm contributed by the general partners; and on June 22d, after these papers had been executed, the contribution by the special partner was deposited in the defendant bank to the credit of the new copartnership. It was proved that it was stated to the officer of the bank at the time of the deposit that the firm was not to commence business until the following day, when the certificate would be filed; but there was no restriction upon the general partners or the new firm which prevented a withdrawal of that deposit from the bank upon the same day on which it was deposited, or before the new firm did business.

By the deposit there was created the relation of debtor and creditor between the bank and the new firm, and the bank was bound to honor the drafts of the new firm upon it to the extent of the deposit. By the execution of these copartnership articles, the new firm became the owner of the assets of the old firm, as transferee of the assets of the old firm, and the new firm was responsible for the payment of the debts of the old firm, to the extent, at any rate, of the amount that it had received

the assets of the old firm. To protect those assets, it was essential that the debts of the old firm should be paid, and there is no allegation that the assets of the old firm were not more than sufficient to pay its obligations, and furnish the capital which the general partners were bound to contribute by a transfer of the assets of the old firm to the new; and, to protect those assets, the members of the new firm had the right to apply the capital contributed by the special partner as his contribution to the new firm. Neither the defendant bank nor the special partner was liable for any misappropriation of the special capital so contributed by the general partners, if there had been a misappropriation; but the evidence in this case, as I view it, is undisputed that there was no such misappropriation. They applied a portion of the capital contributed to the new firm to the payment of the debts of the old firm, as they were bound to do as assignees of the assets of the old firm; and, as a result of such a payment, they acquired the assets of the old firm, discharged from the obligation to pay that sum. When, therefore, they withdrew from the account of the new firm the sum of $60,000, and deposited it to the credit of the old firm, to meet in part an indebtedness of the old firm to the defendant bank, on the afternoon of June 22, 1892, and subsequently applied the balance thus deposited to the credit of the old firm in meeting the obligations of the old firm, there was no misappropriation of the capital contributed, but, on the contrary, a payment by the new firm on account of an indebtedness of the old firm, and which discharged the assets which they received from the old firm from the obligation to pay such indebtedness. The evidence is undisputed that this new firm subsequently received all of the assets of the old firm, paid all its obligations, and continued the business with the capital and assets that it had received from the old firm to August 11, 1893, when it was found that the new firm had become insolvent, and that all of this $60,000 was used in paying the indebtedness of the old firm. The account of the old firm shows that this deposit of $60,000 was made on June 22d, leaving a balance due the old firm, after paying the drafts presented to the bank during the day, of $9,406.21; and this balance was subsequently drawn out of that account by the old firm, and the account was finally balanced and closed. The referee has found, and it is not disputed, that the bank acted in good faith in the usual course of business in paying these checks drawn upon it by its depositors; and in all the transactions there is not the slightest evidence to show that this capital contributed by the special partner was used for any other purpose than in paying the debts of the old firm, and which the new firm was bound to pay if it received the assets of the old firm, and that it was with the assets of the old firm that the business was transacted that the new firm was organized to conduct. Upon no principle can this defendant be liable to the new firm, or to its surviving partners, for the deposit that it received on the 22d of June to the credit of the new firm, and which it has paid out upon checks of the new firm.

It is true that the limited copartnership was to commence on the 23d day of June, and to continue for 10 years, and that fact was stated in the certificate which was duly filed on the morning of June 23d. Assuming that notice of that fact was given to the bank when the deposit of

$200,000 was made, I can see no authority for holding that such a notice tied up that deposit until the special copartnership had been actually performed. I assume that if, for any reason, the certificate had not been filed on the following day, somebody would have been entitled to this money, and the bank would not have been justified in refusing to pay it out upon a check signed by the firm in whose name it was deposited. The bank owed these individuals who had associated themselves together to carry on this business. When the deposit was made there was no limitation of the power of the depositors to withdraw the amount to their credit in the bank, and, when they drew that amount to pay an indebtedness of the old firm, the assets of which had been transferred to the new firm, the new firm certainly could not recover the amount so paid from the creditors upon the ground that it was a misappropriation of the capital of the new firm; and the fact that such a sum had been paid the night before the new firm was to commence business could not at all affect the question.

The rule that property or money of a copartnership cannot be given to discharge the individual indebtedness of one copartner, or for any other than copartnership purposes, has no application to this case, for here the money that was paid was to discharge the indebtedness of the old firm, whose assets had been transferred to the new firm, and whose successor in business the new firm was. Assuming that on the morning of the 23d of June this deposit of $60,000 to the credit of the old firm had not been made, and that the old firm was indebted to the bank in the sum of $60,000 for overdrafts which the bank had paid, on the morning of June 23d, when the new firm took over, under the copartnership agreement, all of the assets of the old firm, and applied them to its own use, the new firm would have been bound to pay to the bank the amount of the indebtedness of the old firm. If it would, then the fact that there was a credit on the books of the bank to the old firm, and a debit on the accounts of the new firm on the night of the 22d, could not affect the rights of either of the parties. The new firm ratified the act of the bank in accepting the check on the 23d of June, by acquiescing in the balancing of the account of the new firm in the bank in which the check for $60,000 was charged as a debit, and was returned to the new firm as a proper charge upon its account. If the bank was entitled to demand of the new firm the payment of the old firm's indebtedness to it on the 23d day of June, the fact that the members of the new firm paid the debt to the bank on the day before, and that the new firm subsequently ratified that act by receiving without objection the voucher for that payment which had been charged to the new firm in the account of the bank, discharged the bank from any obligation to the firm for the money of the new firm which it had received and applied to the payment of an indebtedness for which the new firm was liable. The new firm got all the benefit of this payment. It received the assets of the old firm, discharged from its obligations to pay the indebtedness to the defendant; and, having received the benefit of the payment, it is precluded, while retaining that benefit, from questioning the validity of that payment.

I agree with Mr. Justice HATCH that under the pleadings the defendant was entitled to prove this defense, and that it was error for the

referee to hold that, to be available, this defense must be separately pleaded. I do not agree, however, that upon this record there is no proof that the balance of this check for $60,000, after payment of the amount due the defendant on June 22d, was not applied to the indebtedness of the old firm. On the contrary, it appeared from the account between the bank and the old firm, introduced in evidence by the plaintiff, that on the 22d and 23d of June the bank had paid out on checks of the old firm an amount which, after crediting the old firm with this $60,000, left it indebted to the bank on July 24th in the sum of $331.48, which was made good by the deposit on that day of another check of the new firm for that amount, and then the account was closed. This proof being offered by the plaintiff, it was sufficient to show that the bank had paid out on account of and on the order of the old firm an amount exceeding the sum of $60,000 that was deposited by the firm to the credit of the old firm on the night of June 22d. Upon the undisputed facts, therefore, I think the plaintiff failed to establish any cause of action against the defendant, and that the defendant was entitled to judgment; and, in this state of the record, it seems to be unnecessary to send the case back for a new trial.

The judgment should therefore be reversed, and judgment directed for the defendant, dismissing the complaint, with costs in this court and in the court below.

O'BRIEN and McLAUGHLIN, JJ., concur.

HATCH, J. (dissenting). This is an action at law, brought by the general partners of a limited partnership against the defendant, a national banking association, to recover the sum of $60,000, alleged to be due from the defendant as a balance of deposits made by the plaintiffs. The facts are as follows: On and prior to June 22, 1892, three of the plaintiffs, Edward La Montagne, Jr., Herman Clarke, and Wallace B. Smith, were carrying on business as brokers, under the firm name of La Montagne, Clarke & Co. On the 22d day of June, 1892, the three plaintiffs above named, together with Elisha M. Fulton, Sr. and Elisha M. Fulton, Jr., entered into written articles of copartnership for the formation of a limited partnership, under the laws of the state of New York, to do a general brokerage business. The articles recited the facts that the members of the old firm, together with Fulton, Jr., were to be general partners, and Fulton, Sr., a special partner; that the limited partnership should begin upon the 23d day of June, 1892, and, unless sooner dissolved, would continue for the term of 10 years; that the special partner should contribute as his share of the capital of the limited partnership $200,000; that the partners La Montagne, Clarke, and Smith should contribute to the capital of such limited partnership the sum of $100,000, which should be so contributed by transferring to said limited partnership all of the property, assets, and good will of the former partnership of La Montagne, Clarke, & Co., and in these articles the three members of the old firm covenanted that such property and assets so transferred by them were worth, and within one year would yield in cash, over all the liabilities of the old firm, the sum of $100,000. On the same day all the partners of the new firm

united in a certificate as required by the laws of the state of New York to form a limited partnership—that the same would commence upon the 23d day of June, 1892, and terminate upon the 1st day of July, 1902. Elisha M. Fulton, Jr., also made an affidavit upon the same day, which was filed with the certificate, that the sum of $200,000, specified in said certificate to have been contributed by Elisha M. Fulton, Sr., had actually been paid in in cash. Upon the same day all the partners of the new firm met at the office of the old firm, which office was thereafter to be the office of the new firm; and Elisha M. Fulton, Sr., the special partner, delivered his certified check for $200,000, payable to the order of La Montagne, Clarke & Co., to Mr. Clarke, who indorsed it, "For deposit," and signed the firm name thereto. Thereafter, and about 2 o'clock in the afternoon of this day, Clarke and Fulton, Jr., went to the banking house of the defendant, taking the certified check with them, and they there had an interview with Mr. Mason, the cashier. The old firm had a running account at the bank, and Mr. Clarke introduced Mr. Fulton, Jr., to the cashier as a new member of the firm, and said to Mr. Mason that the $200,000 check was the capital of the special partner, Mr. Fulton's father. An account was then and there opened with the new firm by depositing the check to its credit, and the cashier informed one of the bookkeepers that the new firm was to take the place of the old firm, and that the latter's account would be eventually closed out. The signature book was then brought in, and Mr. Fulton, Jr., signed therein the firm and his name also. Mr. Fulton, Jr., then said to Mr. Mason that they were making the deposit that day, although the firm did not expect to commence business until two or three days thereafter; that they had just signed the papers, but that the certificate could not be filed until the next day, as it was too late, and the firm really would not commence to do business until several days thereafter. Mr. Fulton, Jr., also told Mr. Mason that he was going in as a general partner, but that his father, whose check they had just deposited, was to be merely a special partner. At the close of banking business upon the same day, June 22, 1892, the old firm had overdrawn its account $50,593.79, and a messenger from the bank was sent to the place of business of the old firm, who notified the firm to make good its account. Thereupon one of the general partners of the new firm, other than Fulton, Jr., drew a check upon the new firm for $60,000, which was sent to the bank with a deposit slip, made out by the general partner, Smith, and a deposit made of it to the credit of the old firm, thereby giving the old firm a balance on hand in its account of $9,406.21. In August, 1893, the new firm made an assignment of all its assets to the plaintiff Fulton, Jr., in trust, to collect the same and pay the debts of the firm; and in such assignment they authorized him in such collection to use the name of the firm, and to maintain and continue the bank account in the name of the firm, and otherwise to absolutely control the same. The account was finally closed on October 16, 1893. The passbook had been balanced and vouchers returned therewith by the bank 15 different times between the time of opening and closing the account. The $60,000 check was not found by the plaintiff Fulton, Jr., with any of the returned vouchers, although it was shown to have been returned, and Fulton, Jr., did not learn of the

giving of the $60,000 check until several years after he had closed the account. After June 22, 1892, the account of the old firm was carried for three days, and was then closed, the balance being checked out.

The principal question between the parties hereto is whether the defendant bank is entitled to credit for the $60,000 paid to it upon the 22d day of June, 1892, and deposited to the credit of the old firm of Clarke, La Montagne & Co., under the circumstances above stated. The learned referee found that the bank was not entitled to such credit, and found in favor of the plaintiffs, and from the judgment entered thereon this appeal is taken.

We agree with the learned referee that the bank was chargeable with notice of the fact that the certificate for the formation of the limited partnership would not be filed until the day after the deposit of the $200,000 check made by the special partner, and, having notice of such fact, the bank was not authorized to pay out, either upon the order of the special partnership, or any member of it, the moneys on deposit to the credit of the special partnership, in the absence of the assent of the special partner to such act. The bank was chargeable with notice of the fact that any depletion of the fund of $200,000 contributed by the special partner prior to the filing of the certificate would have the effect of rendering the statement contained therein that the contribution in cash by the special partner had been fully paid in in cash untrue, and, as a consequence, its legal effect would be to make the special partner liable as a general partner for the payment of the firm debts. The law in relation to limited partnerships, as it existed at the time of this transaction (Rev. St. pt. 2, c. 4, tit. 1, § 8; Banks & Bro.'s Ed., vol. 2, p. 1845), provided that, "if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners." The interpretation which the courts have placed upon this statute is that the statement must be true at the time when the certificate and affidavit are filed. White v. Eiseman, 134 N. Y. 101, 31 N. E. 276. The legal effect, therefore, which flowed from the transaction by which the fund was depleted to the extent of $60,000, was to make the special partner liable as a general partner for the firm debts. All persons, therefore, taking part in the depletion of this fund without the knowledge or consent of the special partner, did so at the peril not only of making good the fund to the extent of the depletion, but also were liable for such damages to the special partner as flowed from the act. If, therefore, this case is to be considered as one in the interest of the special partner, solely, to make good the depletion of the fund, or to charge the bank with liability for damages sustained by the special partner in consequence of the diversion of a part of the deposit, the judgment is clearly right, as the bank not only had notice of the character of the deposit and the purpose for which it was placed in its hands, but it also had notice that it must remain intact until the certificate and affidavits required by law were filed. Having such notice of the legal results which flowed from a diversion of the fund, the payment operated as a fraud upon the special partner, and the consequences for such act would be properly chargeable upon the bank in paying the check. We also agree with the learned referee, and for the reasons assigned by him,

that the special partnership has a right to maintain an action for a diversion of this fund in its name, even though one of the general partners was an active participant in the transaction by which the deposit was depleted.   The cases cited by the learned referee support his conclusion in this respect.

We also agree that the property of the firm could not be used for the payment of individual debts of the general partners of the old firm. If this action, therefore, is to be treated as one to recover, based solely upon a diversion of the moneys deposited by the special partner, dissociated from any other act or transaction had between the two firms, and the money was diverted, and used for the payment of debts of individual members of the old firm, and not of the debts or obligations of the special partnership, then we think the action was properly brought in the names of the special partners, and a recovery thereunder would be easily sustained.   Such, however, as we view it, is not this action. The complaint herein avers:   First, that Elisha M. Fulton, Sr., became, with La Montagne, Clarke & Co., the plaintiffs, copartners in a limited copartnership, pursuant to the laws of New York, Elisha M. Fulton, Sr., being the special partner, and the others general partners;   second, that such limited partnership carried on a stock brokerage business from the 23d day of June, 1892, to the 7th day of October, 1893, when it was dissolved by mutual consent, and in accordance with the statute in such case made and provided;   third, that during the existence of such copartnership the defendant was a banking corporation, organized and existing under the laws of the United States;   fourth, that on the 23d day of June, 1892, the defendant was indebted to the copartnership in the sum of $200,000 for moneys collected and received by it upon a certified check of the special partner, which was deposited with the defendant to the credit of such partnership;   fifth, that between the 23d day of June, 1892, and the close of business on the 16th day of October, 1893, the defendant had received for the use of said limited partnership a given sum of money;   sixth, that between the aforementioned dates the defendant paid to the order of the limited partnership, on its checks or orders, a given sum of money;   seventh, that on the close of business on the 16th day of October, 1893, the defendant was indebted to the limited partnership in the sum of $60,000 upon a balance in its favor of the moneys specified in Nos. 4, 5, and 6 of the complaint, and that the same remains due and unpaid.   The complaint demands judgment for this sum, with interest thereon from the 16th day of October, 1893.   It is apparent, therefore, that the cause of action set forth in this complaint is one at law for the recovery of a debt due from the defendant to the limited partnership as such.   There is not a suggestion in the complaint that the plaintiffs were insolvent at the time the action was brought, or prior or subsequent thereto.   There is not a suggestion that the special partner has suffered any loss on account of any transaction alleged in the complaint, or that he has been charged with any greater liability than such as he assumed as the special partner of the firm.   Upon the pleading, therefore, we come to consider this cause of action as resting in the right of the plaintiffs, as general partners, and for the benefit of the special partnership, to recover a debt due by the defendant to the special partnership.   The

answer, in substance and effect, avers payment of the $60,000 to the partnership. The issue is therefore of debt and payment.

The plaintiffs proved, in order to establish their cause of action, the articles of copartnership which were entered into, and which formed the basis in establishment of the limited partnership. These articles provided, as the referee found, that the special partner should contribute as his special capital the sum of $200,000; that La Montagne, Clarke & Co. should contribute $100,000 in specified proportions; that the said sum of $100,000 so to be contributed by these general partners was to be made by transferring to such limited partnership all the property, assets, and good will of the general copartnerships, composed of La Montagne, Clarke, and Smith, then existing and doing a brokerage business under the firm name of La Montagne, Clarke & Co. It seems to have been the view of the learned referee that, as the special partnership was to take over all of the property of the old firm of La Montagne, Clarke & Co., its effect was to impose upon the special partnership the obligation of paying the debts of the old firm, and such undoubtedly is the law. Arnold v. Nichols, 64 N. Y. 117. The assets of the old being transferred to the new firm, the same principle applies as obtains between creditors of the firm and the surviving partners; the property in all such cases being made liable for the payment of debts. Adams & Co. v. Albert, 155 N. Y. 356, 49 N. E. 929, 63 Am. St. Rep. 675; Bush v. Gibbons, 87 App. Div. 576, 84 N. Y. Supp. 478. There is no evidence in the present case which shows, or tends to show, that the old firm was insolvent; and the evidence, it seems to us, was sufficient for the court to find that the assets of the old firm equaled its debts and liabilities, and, in the absence of proof to the contrary, or controlling authority, we should be disposed to hold that the assets of the old firm were enough to discharge its debts and liabilities, and produce a surplus to the amount of the contribution of the general partners. But however this may be, it is clear as a legal conclusion that, when the new firm took over all of the assets of the old, it took them cum onere, chargeable with the payment of the debts and obligations of the old firm. That the new firm recognized this liability is made to appear from the fact that it subsequently paid the debts and obligations of the old firm, due and owing to this defendant, as it paid all of the obligations to it, and took over from it the collateral which it held as security for some, at least, of the indebtedness, and finally closed out the account by giving a check for the balance found to be due the defendant from the old firm. It is undisputed that, upon the day of the transfer of the $60,000 from the new firm to the credit of the old, the indebtedness then due and owing by the old firm to the defendant was $50,593.79. This debt to this extent was a demand held by the defendant against the old firm, which it could have enforced by action against the new firm on the day that the latter filed the certificate and affidavit constituting the special partnership. It was an indebtedness which the new firm was obligated to pay by the terms of the agreement which it had made, and the transfer of the $60,000 discharged such debt. As the obligation to pay this debt was assumed by the new firm, and as it was in fact discharged by the defendant, as having been paid by the check which it received, may it make the discharge of such obligation operate-

as a payment in answer to an action against it for debt?  The learned referee, in his opinion, briefly considered this subject in these words:

"The question is, has the bank discharged its obligation to pay out the moneys deposited by the new firm on its order? If it has not, it cannot justify the payments. If in fact the payments irregularly or improperly made inured to the benefit of the depositor, this may be an equitable defense; that is, the defendant may perhaps show that by its breach of contract the plaintiffs sustained no damage. Shipman v. Bank, 126 N. Y. 331, 333 [27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821]. No such equitable defense is set up in the answer. No attempt is made to prove it."

That the plaintiffs had the benefit of this sum of money to the extent of the obligation then existing in favor of the bank is a conceded fact in the case.  That the defendant discharged the obligation which it held, and for which the new firm was liable, is undisputed.  The legal liability resting upon the new firm to pay was established by the plaintiffs the moment they introduced the articles of the special partnership in evidence, and whatever legal results flowed therefrom, as constituting a defense to this action for debt, the defendant is entitled to its benefit.  Looby v. Village of West Troy, 24 Hun, 78.  It was therefore proved by the plaintiff that the defendant was entitled, in answer to the claim of debt asserted against it, to the benefit of the proof which the plaintiffs made, and this without regard to the state of the pleadings. It must therefore be regarded as established that the defendant applied, for the benefit of the plaintiffs, moneys in discharge of an obligation for which the plaintiffs were liable; and, in action for debt to recover back that sum of money, we are of opinion that the proof as given by the plaintiffs in the case entitled the defendant to be credited therefor as a payment made for and on account of the plaintiffs, and this without regard to the technical question of pleading, as, the fact having been established by the plaintiffs themselves, they cannot be heard to say that the defendant should not have the benefit of what their own proof shows.  It might be otherwise if the plaintiffs' claim were based upon any other consideration than an attempt to enforce the payment of a debt, but in the present form of action the rights and liabilities of the parties are to be considered solely upon the basis of an issue framed to enforce in ordinary course a money demand.  But aside from this consideration, we think the defense was available under the pleadings. The plea of the answer is payment, and, while payment, in its strictest sense, imports the satisfaction of a pecuniary obligation by the delivery of money, yet, in a general sense, it is much enlarged, and embraces anything which operates as a discharge of a pecuniary obligation, or anything which is accepted by the creditor as the equivalent of money, and in satisfaction thereof.  22 Am. & Eng. Ency. of Law (2d Ed.) p. 517.  In Beals v. Home Ins. Co., 36 N. Y. 522, the court adopted this definition:

"To pay, is defined by lexicographers, to discharge a debt; to deliver a creditor the value of a debt, either in money or in goods, to his acceptance, by which the debt is discharged."

There can be no difference in the discharge of a debt by operation of law where the facts out of which arises the rule require such operation, and where the payment is by agreement.  Where it appears, in an action to recover a debt, that the parties seeking to enforce it have had the

money which they seek to recover applied in discharge of an obligation upon which they were liable, the law imports an acceptance upon the part of the creditor of the thing which operates as a discharge of the demand; and, where such fact appears, it will be an exceptional case where recovery of the money so applied will be permitted. In Farmers' & Citizens' Bank v. Sherman, 33 N. Y. 69, it was held that new matter might be given in evidence which amounted in law to a satisfaction of the claim. Therein the action was upon a promissory note made by the defendant for the accommodation of one Pomeroy. Pomeroy, after the delivery of the note to the plaintiff, entered into an agreement by which he was to deliver to the plaintiff, in discharge of an indebtedness which he owed to it, including the note in question, a quantity of lumber, at a specified time and for specified prices, and, upon the delivery of such lumber, paper to the amount and value of the lumber as Pomeroy might require was to be returned. The whole amount of his indebtedness to the bank was $13,000. He delivered thereafter $5,840.20 worth of lumber, and then requested the surrender of the note, which the bank refused, and it thereafter brought action thereon. When he sought to show the transaction, objection was interposed that under a plea of payment the evidence of the agreement was inadmissible. The court upon this subject said:

"The answer simply alleged payment, which, as it is claimed, in legal contemplation, means payment in money, and evidence to prove payment in any other way than by cash did not sustain the allegations of the answer. That the answer gave no notice of the defendant's intention to prove payment in any other way than by cash. It did not set forth nor disclose the particulars of the transaction between Pomeroy and the plaintiffs, and hence the unexpected admission of proof of the transaction under such a pleading surprised them. There is no force in these objections, considered as a question of pleading. The answer alleged payment, and it was competent, under the pleading, to prove that payment had been, in fact, made either in cash or in some other way. If payment be relied on as a defense, it would be bad pleading to allege the evidence of the fact instead of the fact itself; and, when the fact of payment is pleaded, there is no rule requiring the evidence, or a concatenation of evidence, establishing payment, to be alleged in the pleading, to render such proof legally admissible. In this case it was not required that the particular facts relied on as amounting to payment should have been set forth in the answer. It was enough if those facts sustained the plea of payment."

In McLaughlin v. Webster, 141 N. Y. 76, 35 N. E. 1081, the court said:

"But the defendants had pleaded payment generally, and under that defense were entitled to give proof of any agreement between the parties in the lifetime of the testator that operated to discharge the debt. It is not necessary generally to state the particular manner in which the obligation was extinguished. Any valuable consideration moving from the debtor to the creditor, which the parties agree shall operate to satisfy the debt, will be given that effect, in the absence of fraud or mistake, especially in the case of debts unsettled and unliquidated. When parties agree that a debt shall be deemed paid and satisfied by a provision in favor of the creditor in a will, and that provision is made, and the creditor has received the benefit of it, I see no reason to doubt that the facts may be shown under a pleading alleging payment or satisfaction generally." Stirna v. Beebe, 11 App. Div. 206, 42 N. Y. Supp. 614; Quin v. Lloyd, 41 N. Y. 349.

In the present case the articles of copartnership constituting the special partnership contained an agreement by virtue of which the part-

nership obligated itself to discharge the debts of the old firm. They were therefore under an agreement to pay those debts, and when the obligation, being in existence, was discharged by the creditor, a debt, as such, ceased to exist in favor of the partnership, which had received the benefit of the money applied in its discharge. The defendant therefore had the right to prove such facts, and, as their legal effect was to operate as a payment in discharge of the claim to the extent of the obligation, to that extent there was no debt to enforce at the instance of these plaintiffs in this action. The defendant was not, as we have already observed, called upon to make such proof, as the plaintiffs proved all of the facts essential to make the doctrine of payment applicable. The referee found that the new firm became insolvent prior to its dissolution. There was no proof to establish such fact, save that given by Elisha M. Fulton, Jr., when he was recalled by the plaintiffs, and permitted to testify, over the objection and exception of the defendant, that they were insolvent; the liabilities of the firm over the assets being $115,000. The agreement of dissolution did not state that the firm was insolvent; the sole statement upon that subject being that the partnership "found itself in embarrassed financial circumstances, and whereas, in endeavoring to extricate the said partnership from embarrassment," William P. Whitlock had advanced large sums of money. Then follows the agreement for dissolution. Insolvency was not within the issue raised by the pleadings, and evidence to prove it was inadmissible, and, as it was objected to, it was improperly received; but it cannot now be availed of as furnishing any basis upon which to found the present action. M. Groh's Sons v. Groh, 177 N. Y. 8, 68 N. E. 992.

These views, however, do not lead us to the conclusion that the judgment should be reversed in its entirety. The indebtedness of the old firm to the defendant, as we have seen, was overpaid by the sum of $9,406.21. For this sum there was no indebtedness due by the old firm to the defendant, or to any one else, for which the new firm, so far as appears by this record, was liable. Nor has it been made to appear that such sum was applied for the benefit of the new firm. For aught that appears, it was used exclusively for the benefit of the old firm, so that to that extent the defendant has failed in its defense, as payment of that sum of money is not shown to have been made by the bank, either in the discharge of obligations held by it, for which the new firm was liable, or otherwise. We are of the opinion, therefore, that to this extent the plaintiffs are entitled to recover. So far as the other questions which were raised and argued upon the present appeal are concerned, we think they were properly disposed of by the referee, and, as each question was fully and completely discussed by him in the learned opinion which he delivered, it renders further consideration here unnecessary.

It follows that the judgment should be modified by striking from the recovery the sum of $50,593.79, with interest thereon from the 13th day of December, 1895, and, as so modified, the judgment should be affirmed, without costs to either party in this court.

VAN BRUNT, P. J., concurs.