JOHN WHITE *vs.* AUGUSTUS B. FARNHAM, Trustee.

Penobscot. Opinion May 25, 1904.

*Dormant Partner. Chattel Mortgage. Trover. Words,* "blind partner."

1. In a dormant partnership, the funds of the visible partner and those purporting to be his, although actually belonging to the partnership, are, with respect to the rights of innocent third parties, to be regarded as his sole property.

2. In an action of trover brought to recover of the defendant, as trustee in bankruptcy, the value of certain personal property which came into the hands of the defendant from the estate of M. M. Grant, bankrupt, and was duly sold by the trustee, as an asset of said estate, it appeared that the plaintiff claimed under a mortgage which, he says, at the time of the sale had vested in him a valid lien upon the whole of the property. Samuel Grant, brother to M. M. was, according to the plaintiff's own statement, "a blind partner" with M. M. in the business in which the personal property in question had been employed. Samuel Grant, the blind or dormant partner, without the knowledge or consent of M. M. executed and delivered to the plaintiff the mortgage under which he claims and thereby conveyed to him the personal property which was, at the date of the mortgage and long prior thereto had been, ostensibly the sole property of M. M. Grant, and claimed and used by him as his own individual property.

3. *Held;* that neither upon authority nor reason does the law permit a transaction so manifestly calculated to work an injury as that claimed by the plaintiff; *also;* that the defendant's title received through the ostensible partner is superior to the plaintiff's acquired through a secret partner.

On report. Judgment for defendant.

Trover for the alleged conversion of several horses and other goods and chattels.

Plea, the general issue.

Plaintiff claimed title under a recorded chattel mortgage, the signature to which was, "M. M. and Sam Grant by Sam Grant." Defendant claimed as trustee in bankruptcy of the estate of Madison M. Grant.

The case is stated in the opinion.

*F. J. Martin and H. M. Cook; W. R. Pattangall; B. C. Additon,* for plaintiff.

Counsel contended that under all the evidence, it is clear that the partnership, which it is admitted existed between the two Grants during the first year's operation, continued to exist after the time the mortgage in question was given to the plaintiff.

There can be no question but what a member of the partnership, although he be a dormant or secret partner, in the absence of any partnership agreement to the contrary, has authority and power to execute a mortgage of the partnership property to secure a partnership debt. Vol. 1 Bates on Partnership, 154.

This mortgage was executed by a member of the firm having authority to do so, to a creditor of the firm, to secure a debt of the firm. It was done in good faith. The mortgage was immediately recorded. It was given before any attachment, and before the other creditors had acquired any lien upon the property mortgaged. The defendant admittedly converted the property covered by the mortgage. Plaintiff then is certainly entitled to recover its value, unless, as claimed by the defendant, he is estopped either by some word or act of his.

Counsel further contended that there was no evidence that any firm creditor was in any way prejudiced because plaintiff consented to a change in the name of the firm. The fact that they discovered later

that two men were liable to them instead of one for the same debt is certainly not to their prejudice.

If the creditors were deceived in supposing that the property belonged to Madison M. Grant individually, it was not by any word or act of plaintiff. The plaintiff is not responsible nor should he be made to suffer on account of any statements made to creditors by Madison M. Grant.

Counsel cited: *Reynolds* v. *Bowley*, L. R. 2 Q. B. 474; *French* v. *Chase*, 6 Greenl. 166; *Lord* v. *Baldwin*, 6 Pick. 348; *Cammack* v. *Johnson*, 2 N. J. Eq. 163; *Witter* v. *Richards*, 10 Conn. 37, at p. 40.

*P. H. Gillin and T. B. Towle; F. H. Appleton and H. R. Chaplin,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J. This is an action of trover brought to recover of the defendant, as trustee in bankruptcy of M. M. Grant, the value of certain personal property which came into the hands of the defendant from the estate of said Grant and was duly sold by him, as trustee, as an asset of said estate.

The plaintiff claims under a mortgage, which, he says at the time of said sale, had vested in him a valid lien upon the whole of the property sold. The facts are as follows:

M. M. and Samuel Grant were co-partners in the lumber business in the fall of 1894, and as such carried on lumbering operations, extending into 1895. After this year's business was practically concluded, in the fall of 1895, M. M. having become dissatisfied with his business associations with Sam, desired to sever his partnership relations with him, and claims that he did so in full; but the plaintiff contends otherwise and asserts that a qualified partnership between them was continued through all the years covering his transactions with M. M. Grant. His own statement of the interview which established the dormant partnership is this: "They met on the street and Madison says 'they are annoying me, Sam's creditors are annoying me every time I am here' and he says 'I would like

to have his name stricken from the firm and he remain what we call a blind partner.' I thought I understood the law that that could be done." "Well, I says, that will be all satisfactory. He told me what he had said to me, that I should have my pay first, and that would be all satisfactory, and it was left in that way, and from that time out everything was between him and I. He used his name in our settlement and that was all there was of that affair." The plaintiff therefore knew of and agreed to Sam's becoming a "blind partner" in the fall of 1895, and thereafter did all his business with M. M. not as a member of the firm but as an individual. January 26, 1898, he took, in a settlement involving these alleged blind partnership transactions, M. M.'s individual note for over eighteen thousand dollars. With respect to the signature on the note he says; "This is signed by Madison Grant. He signed that,—all of the papers to me after the first year, after we made the agreement he should be a blind partner, when Sam's name was dropped."

Thus it appears from the plaintiff, himself, that after 1895, he not only knew it, but entered into an agreement with the Grants, that Sam should be continued as a blind or dormant partner, and that M. M. should be held out to the community as doing business alone. Not only did the plaintiff agree to this, but all of his own business transactions with M. M. were entirely consistent with the agreement, and calculated to present M. M. to the public as the only visible partner. This alleged business arrangement between the plaintiff and the Grants continued until November 12, 1898, when M. M. Grant went into voluntary bankruptcy. In the meantime the mortgage, under which the plaintiff claims, was executed on the 18th day of October, 1898, by Samuel Grant, the alleged "blind partner" without the knowledge or consent of M. M. Grant. It is signed "M. M. and Sam Grant by Sam Grant," and covers all the horses, sleds, harnesses and other utensils employed by M. M. in his lumbering operations. All of this property whenever acquired was ostensibly the sole property of M. M., and he appeared to all the world to be the only owner.

For the purposes of this case, we have assumed that the plaintiff's statement of facts, as above given, is true. This was not, however, admitted at the trial, nor do we wish to be understood as finding that Sam Grant was a "blind partner." We concede it to be so for the purpose, only, of considering the issues in the light of the plaintiff's own contention with respect to the facts, and one which, if true, is decisive of this case.

. Plaintiff's counsel in their brief state the issue to be "in order to prove his own title the plaintiff must satisfy the court that on October 18, at the time the mortgage was given, Sam Grant was a partner of Madison M. Grant." If counsel use the term partner in the ordinary sense, their position, as a matter of legal statement, is undoubtedly correct; but if, by the use of the term, they mean such a qualified relation to M. M. as the plaintiff has described by the phrase "blind partner," such relation, if existing, would not authorize Sam Grant to so dispose of the partnership property as to conclude the rights of an innocent third party, dealing in good faith with the ostensible partner as an individual and without knowledge to the contrary.

Neither upon authority nor reason does the law permit a transaction so manifestly calculated to work an injury as that claimed by the plaintiff. What was attempted in this case clearly illustrates the pernicious operation of a law which would allow it. M. M. Grant was ostensibly doing business as an individual. As such he established his credit. Parties trusting him had a right to rely upon his ability and honesty, as well as his property, for their security. But having given credit and acted upon the assumption that they were dealing with the visible partner only, then Sam Grant, who had never before been heard of in connection with M. M., except by the plaintiff, suddenly discloses his blind relationship and, within the time sufficient to enable him to sign two names to a mortgage, conveys to the man who was in the "blind partner" secret, every vestige of the operating property of which M. M. Grant was ostensibly or actually possessed. Those who had given credit to M. M., upon his apparent and declared ownership of this property, were, by the stroke of Sam's pen, abruptly informed that they had based their

credit upon a shifting sand. Such a transaction cannot be permitted to stand. The law will not allow it. The question involving the rights of parties in their dealings with silent or dormant partnerships was, at an early day, considered by both our own court and that of Massachusetts.

In *French* v. *Chase*, 6 Maine, 166, the plaintiff in replevin claimed title to the goods in question under a sale of them by Walter Brown. The defendant pleaded property in Brown and Quimby, as partners, and that he as a deputy sheriff attached the goods by virtue of a writ against them, issued upon a partnership note, signed by Quimby only. It was admitted that Brown and Quimby were partners and that the firm was insolvent. The partnership however was a secret one and at one time was carried on in the name of Quimby, and afterwards by Brown in his own name, Quimby having no apparent interest in it. Such was the case when the plaintiffs made the purchase. The defendant contended that he had a right to the goods by virtue of the attachment, on the ground that the note was given for a partnership debt, and came within the well known principle that partnership funds must first be applied to partnership debts, and that, until such debts are satisfied, a creditor of one of the firm cannot appropriate any portion of them. But the court say, p. 169, "The question here is, whether this principle is applicable in the present case, when Brown alone was the ostensible owner, and the existence of any partnership was wholly unknown to the plaintiffs. To extend the principle thus far would be unreasonable and unjust, and farther, we apprehend, than it has ever been carried by any judicial decision. The reason upon which the doctrine is founded, cannot exist where the business of a secret partnership is all transacted by and in the name of one of the partners, who appears to all the world as the sole owner."

The facts in that case are identical with those in the case at bar. In that case the plaintiffs obtained title to the goods from the ostensible partner, the defendant, upon a note of the silent partner upon a firm debt. In the case at bar the defendant received title through the ostensible partner; the plaintiff through a secret partner upon a firm debt.

In *Lord* v. *Baldwin*, 6 Pick. 348, the same principle is laid down as governing this class of cases. At this time, 1828, Parker, C. J., in delivering the opinion of the court took occasion to remark that "the question presented in this case is entirely new," and that "the silence of the books themselves seems evidence of the unsoundness of the doctrine now sought to be applied," which was identical with that asserted by the plaintiff in the case at bar. In applying the ordinary principles of law, relating to co-partnership matters, to the facts in the case here cited, involving a silent partner, the court on page 350 use this language: "It is only the application of this principle to cases as they arise, which can afford any room for argument or doubt, and in order to determine such question, the reason of the rule must be sought for, and the particular case must be brought within the reason, as well as within the terms of the law. The basis upon which the rule rests, is, that those funds shall be liable upon which the credit is given. Those who sell goods or make contracts with a company or firm, are supposed to trust to the ability or property of the firm. Those who trust the individual member, rely upon his sufficiency alone."

"But the case before us is that of a dormant partnership, which is necessarily, from its very character, unknown at the time the liability is incurred." In this case the dormant partner was brought to light by ex post facto investigation and the creditors who discovered him claimed a preference upon the firm property. But the court say that the reason for the rule by which they claim a preference does not exist, and that "even if he (the dormant partner) owned the whole of the stock, as between him and the known man of business, still it is in law the property of the latter, for he is allowed to claim and use it as his alone, and thus lead persons to trust him upon the faith of the goods in his possession."

In *Cammack* v. *Johnson*, 2 N. J. Eq. 163, both the above cases are ably reviewed, and the reasons and principles therein declared fully approved and adopted. With respect to *Lord* v. *Baldwin*, the chancellor says, "the true principle is, in my opinion, laid down in that case." Then referring to the reasons in his own language, he says, "In an open firm the credit is given to the firm and to the goods they

are possessed of; and a partnership creditor shall be first paid out of them; but if the partner be unknown the credit is given to the visible partner only, and the goods in his possession are supposed to be his own, and in such case the discovery of such latent partner cannot give any preference to a partnership creditor.   As between the partners themselves, I see no reason to make any distinction in their rights, whether they are dormant or not; but as to the public, it is not only highly proper, but necessary to prevent injustice toward creditors, that this difference should be observed." The case of *French* v. *Greenleaf*, he says "is still stronger." He finally concludes by saying, "Upon a careful examination of the cases on this subject, as well as from the reason and propriety, I am clearly of the opinion that the execution creditor has his remedy complete against all the effects of the visible partner, and all the effects which belong to him and his dormant partner as partners, and that it makes no difference whether the debt was contracted by the debtor on partnership account or on his individual account."

These decisions, conceding the plaintiff's own contention as to the facts, are decisive of the case against him.   The property sought to be conveyed by Sam Grant was admitted to be in the possession of M. M. the only visible partner, and there is no suggestion that any of the creditors, whom the defendant, as trustee in bankruptcy, represents, had any knowledge of the dormant partner or gave any credit to him.   This property then was first subject to the liabilities of M. M. Grant, whether by attachment or in bankruptcy.

The above decisions declare the rule to be that, in a dormant partnership, the funds of the visible partner and those purporting to be his, although actually belonging to the partnership, are, with respect to the rights of innocent third parties, to be regarded as his sole property.   In fairness to M. M. Grant, it should be stated that he emphatically denied any partnership whatever with Sam Grant, secret or otherwise.

In accordance with the stipulation in the report the entry must be,

*Judgment for the defendant.*