WILLIAM G. KILHOFFER and GEORGE J. WEBER, as Executors of the Last Will and Testament of Michael Zeis (Deceased), Plaintiffs, *v.* JOHN G. ZEIS et al., Defendants.

(Supreme Court, Erie Equity Term, December, 1919.)

**Wills** — construction of — provisions of — devise — partnership — legacy — evidence — dower — marshalling and distributing assets.

Where a partner by will directs that his share of the capital and assets be not withdrawn from the firm for a specified period, or until a specified contingency, and remain meanwhile under the control of the surviving partners, as survivors, the capital and assets thus continued in the business are liable for the debts and losses thereof.

Testator, at the time of his death, was the owner of a seven-ninths interest in a planing mill business conducted by a partnership composed of himself and his two sons, to whom by his will he gave and devised all his interest real and personal in the business and property, together with all funds credited to him, except such as might be required to pay certain legacies, with direction that one son should have charge of the financial part of the business and the other son the general supervision of the practical operation thereof. The bequest to the sons was upon the express condition that the partnership should continue and not be dissolved for eight years after the death of the testator, and in case either son should attempt a dissolution within such time limit he should forfeit his bequest under the above mentioned provision, and should receive only the " one-tenth interest which he now owns " with accrued profits credited to him " in said copartnership " and the remaining interest should become the property of the son who should remain in the business. Though certain legacies were authorized to be paid in whole or in part if the sons were able to do so without hampering the business, payment was not required until the expiration of the eight years specified. In an action for marshalling and distributing the assets of the business which the sons continued until the concern became insolvent and a receiver thereof was appointed, *held,* that the above pro-

visions of the will authorized the continuation of the copartnership business by the sons as surviving partners but did not make the general estate of the testator a continuing partner with said sons.

The testator's interest in the partnership business was alone at the risk of the business and the creditors of the firm could not look to the general estate of the testator; such interest of testator was liable to the creditors of the firm for the payment of partnership debts whether contracted prior to or after the death of testator; that until such debts were paid the legatees under the will had no right to demand payment of their legacies and the fund in court being insufficient to pay the business creditors in full, the legatees were not entitled to participate in the distribution of the fund.

Though in a sense the legacies were a charge against the business they were neither superior nor equal to that of general creditors but were simply an equitable charge against the testator's net interest after the payment of all proper indebtedness of the business.

Upon the hearing of the claim of a bank to priority of payment over debts contracted in the business after the death of the testator, it appeared that at that time the firm was indebted to the bank upon notes for about $82,000, which had been reduced to $55,000, and while $6,302.75 of this amount was represented by notes accepted by the bank on transactions entirely independent of the original indebtedness and taken subsequently to the death of the testator, the balance represented notes taken in renewal, in whole or in part, of notes held by the bank at the time of the testator's death. *Held,* that the provisions of the will were tantamount to an express waiver of testator's right to have the affairs of the firm liquidated and its debts paid. The bank, having knowledge of the death of the testator and of his will, must be presumed to have known of the legal force and effect of its provisions, and as in the circumstances it would be inequitable as against other creditors that the bank be paid in preference to them, it must share *pro rata* with other creditors in the distribution of the assets of the firm.

The testator gave his widow the use of his residence with direction that the executors pay to her fifty dollars a week for maintenance. The sons as survivors of the firm, though they were under no legal obligation so to do, made the weekly payments to their mother from the funds of the firm and charged

the same on the books to the labor account of the business. There was no evidence that would warrant the conclusion that the widow knew or supposed that such payments to her embarrassed the firm or tended to make it insolvent, nor was there evidence of any intent on her part to cheat or defraud creditors. *Held*, that while such payments were unauthorized the creditors had no cause of action against the widow and that she was not legally liable to refund the amount so received.

All parties having recognized the mill property as belonging to the firm the widow's dower right therein, if any, was subject to the payment of the firm's debts, and her plea that she had relinquished her dower in the real estate of the firm was not good, its assets being inadequate to pay and discharge its debts.

ACTION for marshalling and distributing assets.

Harry B. Lamson, for plaintiffs.

Moot, Sprague, Brownell & Marcy, for defendant Laidlaw Lumber Company and others.

Locke, Babcock, Spratt & Hollister, for Manufacturers and Traders' National Bank.

August Becker, for defendants Pascal F. Beale and others.

Morey, Bosley & Morey, for defendants Taylor & Crate.

Richard L. Ball, for Hendricks-Caskey Company et al.

Lewis & Carroll, for defendants Walburga Zeis et al.

Killeen, Karl & Chapin, for defendant John G. Zeis.

Paul J. Batt, for defendants Elizabeth and Edward Zeis.

Gibbons & Pottle, for defendant Raymond Zeis.

Gregory U. Harmon, for defendant Raymond Zeis.

WHEELER, J. This action as it now comes before the court, is one for marshalling and distributing the assets of "M. Zeis & Sons," a copartnership of which Michael Zeis was a member during his lifetime. The firm at the time of the death of Michael Zeis was composed of Michael Zeis and his two sons, John G. Zeis and Edward Zeis. Michael Zeis, at the time of his death, owned seven-ninths interest in said firm, and his sons one-ninth each. Michael Zeis, the father, died on the 30th of November, 1915, leaving a last will and testament, which was duly probated December 18, 1915, and letters testamentary thereon were duly issued to William G. Kilhoffer and George J. Weber, the plaintiffs in this action.

His will reads as follows:

"I, Michael Zeis, of the City of Buffalo, County of Erie and State of New York, being of sound mind and memory, and mindful of the uncertainty of this frail and transitory life, do make, ordain, publish and declare this to be my last Will and Testament in manner following, that is to say:

"*First.* I direct the payment of all my just debts and funeral expenses.

"*Second.* I give, devise and bequeath unto my sons John Zeis and Edward Zeis, my present co-partners in the firm of M. Zeis & Sons, all and singular, all my interest in the planing mill business and property, both real and personal connected therewith, now carried on at No. 200 Cherry Street in the City of Buffalo, New York, together with all funds credited to me, except such as may be required to pay the legacies under paragraphs three, four, five, six and seven of this my

last Will and Testament, to be divided between them share and share alike.

" It is my further wish and direction that in the management and conduct of the said business, so bequeathed to my said sons John Zeis and Edward Zeis, that Edward shall have charge of the financial end of the business and it's management and control, sign checks and have the general supervision and charge of the business, and John shall have charge of such work as he has been doing in the box factory, and do such other work in the practical department of the mill work as may be necessary in the proper carrying on of said business.

" The bequest to my said sons John Zeis and Edward Zeis is made expressly upon the condition that the said co-partnership shall continue and last, and not be dissolved for a period of eight years after my decease, and in the event that either one of my sons should desire or attempt to dissolve said co-partnership within eight years after my decease, the one so desiring to dissolve or dissolving the co-partnership within such time shall forfeit his bequest under this paragraph two of the interest in the co-partnership bequeathed to him, and shall receive no greater interest than the one-tenth interest which he now owns, together with any profits or moneys credited to him in said co-partnership, and the interest so bequeathed to him in this paragraph is hereby in that event bequeathed to my son who shall remain in the business and continue the same.

" It is also my wish and direction that the bequests of Ten Thousand dollars ($10,000.00) each, as hereinafter set out in paragraphs three, four, five, six and seven of this my last Will and Testament, shall not be required to be paid until the expiration of eight years after my decease, and the same shall be paid and

received by such legatees named in paragraphs three, four, five, six and seven without interest; but, I hereby further request that my sons John and Edward pay such legacies to said persons named in said paragraphs three, four, five, six and seven in such sums as they are able to from time to time sooner, and in such amounts as they are able to without hampering said business.

" *Third.* I give, devise and bequeath unto my daughter, Jennie, wife of Dr. Harold P. Jehle, the house and premises in Boston, Erie County, New York, where she now resides, and the further sum of Ten Thousand Dollars ($10,000.00) cash; it. being my express direction that the said sum of Ten Thousand Dollars ($10,000) so bequeathed to my said daughter Jennie is to be paid out of moneys credited to me in the firm of M. Zeis & Sons, with this provision that said bequest of Ten Thousand Dollars ($10,000) shall not be required to be paid by my said sons John Zeis and .Edward Zeis, to whom I have bequeathed my interest in the planing mill business under the second paragraph of this my last will and Testament, within eight years after my decease, so as not to unduly require said John Zeis and Edward Zeis to pay the same to the injury of said business, and shall be paid to her and be received by her without interest.

" *Fourth.* I give, devise and bequeath unto my daughter Barbara, wife of Charles Dietz, house No. 74 West Parade Avenue in the City of Buffalo, New York, during the term of her natural life, and on her death to my grand children: Harold Dietz, Marcella Dietz, Viola Dietz and Cerril Dietz, and any further issue absolutely; and the further sum of Ten Thousand Dollars ($10,000) cash; it being my express direction that the said sum of Ten Thousand Dollars ($10,000) so bequeathed to my said daughter Barbara

is to be paid out of moneys credited to me in the firm of M. Zeis & Sons with this provision, that said bequest of Ten Thousand Dollars ($10,000) shall not be required to be paid by my said sons John Zeis and Edward Zeis, to whom I have bequeathed my interest in the planing mill business under the second paragraph of this my Last Will and Testament, within eight years after my decease, so as not to unduly require said John Zeis and Edward Zeis to pay the same to the injury of said business, and shall be paid to her and received by her without interest.

" *Fifth.* I give, devise and bequeath unto my daughter Mamie, wife of Thomas A. Rich, house No. 76 West Parade Avenue in the City of Buffalo, New York, and the further sum of Ten Thousand Dollars ($10,000) cash; it being my express direction that said sum of Ten Thousand Dollars ($10,000) so bequeathed to my said daughter Mamie is to be paid out of moneys credited to me in the firm of M. Zeis and Sons, with this provision, that said bequest of Ten Thousand Dollars ($10,000) shall not be required to be paid by my said sons John Zeis and Edward Zeis, to whom I have bequeathed my interest in the planing mill business under the second paragraph of this my last Will and Testament, within eight years after my decease, so as not to unduly require said John Zeis and Edward Zeis to pay the same to the injury of said business, and shall be paid to her and received by her without interest.

" *Sixth.* I give, devise and bequeath unto my daughter Rose, wife of Louis Wolf, the sum of Ten Thousand Dollars ($10,000) cash; it being my express direction that the said sum of Ten Thousand Dollars ($10,000) so bequeathed to my said daughter Rose is to be paid out of moneys credited to me in the firm of M. Zeis & Sons, with this provision, that said bequest

Supreme Court, December, 1919.    [Vol. 109.

of Ten Thousand Dollars ($10,000) shall not be required to be paid by my said sons John Zeis and Edward Zeis, to whom I have bequeathed my interest in the planing mill business under the second paragraph of this my last Will and Testament, within eight years after my decease, so as not to unduly require said John Zeis and Edward Zeis to pay the same to the injury of said business, and shall be paid to her and received by her without interest.

"*Seventh.* I give, devise and bequeath unto my daughter Lucy, wife of John Steudle, Jr., the sum of Ten Thousand Dollars ($10,000) cash; it being my express direction that the said sum of ten Thousand Dollars ($10,000) so bequeathed to my said daughter Lucy is to be paid out of moneys credited to me in the firm of M. Zeis & Sons, with this provision, that said bequest of Ten Thousand Dollars ($10,000) shall not be required to be paid by my said sons John Zeis and Edward Zeis, to whom I have bequeathed my interest in the planing mill business under the second paragraph of this my last Will and Testament, within eight years after my decease, so as not to unduly require said John Zeis and Edward Zeis to pay the same to the injury of said business, and shall be paid to her and received by her without interest.

"*Eighth.* I give, devise and bequeath unto my beloved wife Walburga Zeis the life use of my house and residence No. 86 West Parade Avenue, together with the horses, carriages and automobiles and also direct my executors, hereinafter named, to pay her the sum of Fifty Dollars ($50.00) for weekly maintenance, and upon the death of my said wife the said house and premises and contents, horses, carriages and automobiles are hereby bequeathed to my two daughters Rose, wife of Louis Wolf, and Lucy, wife of John Steudle, Jr., share and share alike.

" *Ninth.* I give, devise and bequeath unto my grandson Raymond Zeis, son of George Zeis, the sum of Two Thousand Dollars ($2,000) to be paid to him when he shall arrive at the age of twenty-one years.

" *Tenth.* I give, devise and bequeath unto my granddaughter Florence Zeis, daughter of my son George Zeis, the sum of One Thousand Dollars ($1,000) to be paid to her when she shall arrive at the age of twenty-one years.

" *Eleventh.* I give, devise and bequeath unto my son, Edward Zeis the automobile used by me for the purpose of going to and from my business.

" *Twelfth.* I have made no bequest to my son George Zeis in this my last Will and Testament, for the reason that he has in my lifetime received large sums of money from me which he has used for himself, and which amounted to about the bequests that I am making to my other children herein, and in addition to receiving those large sums of money from me he has failed in filial duties and obedience.

" *Thirteenth.* I make, constitute and appoint William G. Kilhoffer and Rev. George J. Weber to be Executors of this my last Will and Testament, hereby revoking all former Wills by me made, giving unto my said Executors full power and authority to sell and convey any and all of my real estate.

" In witness whereof, I have hereunto subscribed my name and affixed my seal the 21st day of January, in the year of Our Lord One thousand Nine Hundred and Fifteen."

" MICHAEL ZEIS. [L. s.] "

The surviving partners accepted the provisions of the will, and continued to conduct the business without interruption until the appointment of a receiver of the partnership property in this action.

On December 18, 1915, they executed and caused to be recorded in the Erie county clerk's office a certificate in which they certified: '' That as surviving partners of the late firm of M. Zeis & Sons, consisting of ourselves and M. Zeis, deceased, carrying on planing mill and box factory business, is carried on and will be carried on by us under the name of M. Zeis & Sons, at No. 200 Cherry Street, in the City of Buffalo, County of Erie and State of New York.''

A new ledger was opened on January 1, 1916. All balances were carried from the old to the new ledger, the only change made being that the personal account of Michael Zeis was changed to '' M. Zeis Estate.''

On November 30, 1915, at the time of Michael Zeis' death, this account showed a balance in his favor of $76,521.44. When the books were closed a month later at the end of the calendar year, seventy per cent of the losses of the business were charged to the account, to wit: $14,231.11, and fifteen per cent to the account of each John Zeis and Edward Zeis.

John and Edward Zeis continued the business until the concern became insolvent and a receiver was appointed as stated.

The assets subject to distribution amount in all to about $80,000. The claims against this fund aggregate about $160,000. The claims of merchandise creditors amount to upwards of $35,000. The claim of the Manufacturers and Traders' National Bank to some $62,000 for money loaned, and the claims of legatees under the will of Michael Zeis to some $60,000. The Manufacturers and Traders' National Bank contends that having been a creditor of the old firm of M. Zeis & Sons in an amount in excess of the present indebtedness to it, and the present notes held by the bank being renewals of former ones, that such renewals did not amount to a payment of the old debt, and that as a

consequence the bank is entitled to priority of payment from the assets of the firm over creditors whose debts were created after the death of Michael Zeis, and before the legatees under the will receive their legacies. The creditors whose debts were created subsequent to the death of Michael Zeis contend that they stand on the same footing with the bank and are entitled to share *pro rata* with it on the distribution of assets, and before the legatees receive their legacies.

The legatees claim to be creditors of the firm and entitled to share in the distribution of the assets.

Other questions are also involved which will be referred to later.

Perhaps the main question about which the others largely revolve is the question whether the testator authorized the continuance of the firm business.

By the " Second " paragraph the testator gives and devises to his two sons all his interest, real and personal, in the planing mill business and property, together with all funds credited to him, except such as may be required to pay certain legacies.

He directs that in the management of said business, his son Edward shall have charge of the financial part, and his son John of the general supervision of the practical operations of the said business.

The bequest to his sons is " Made expressly upon the condition that said copartnership shall continue and last, and not be dissolved for a period of eight years after my decease," and in case either son shall " attempt to dissolve said copartnership within eight years after my decease " he shall " forfeit his bequest " under the clause and shall receive only the " *one-tenth interest which he now owns* " with accrued profits credited to him " *in said copartnership,*" and the remaining interest shall become the property of the son who shall remain in the business.

He directs that the legacies given in the 3d, 4th, 5th, 6th and 7th paragraphs shall not be required to be paid until the expiration of the eight years specified, but authorizes payment in whole or in part sooner, if they are able to do so without hampering the business. I am of the opinion that these provisions authorized the continuation of the copartnership business. The testator not only authorized this course, but undertook to direct how it should be managed and the part each son should have in its conduct. It is impossible to put any other construction on the will. If this view be correct, then all the testator's estate invested in the business was put at the hazard of the enterprise. If the business failed or the firm became insolvent the interest of the estate so invested would be lost to the estate. The executors as such were not to continue the business, but his sons as surviving partners.

The general estate was not' at the risk of the business, but under well-settled principles of law only so much of the estate as was invested in the business can be reached by creditors of the insolvent firm. *Thorn v. De Breteuil,* 179 N. Y. 64–78; *O'Brien v. Jackson,* 167 id. 31; *Willis v. Sharp,* 113 id. 586; *Manhattan Oil Co. v. Gill,* 118 App. Div. 17; *Matter of Hickey,* 34 Misc. Rep. 360.

This is particularly true in the case now under consideration because if the business to be continued turned out prosperous and profits were made, the estate at large got no benefit of its success save as it enabled the business to pay more easily the legacies directed to be paid from the enterprise.

To the extent, however, that the testator had money and property invested in the business to be continued, it must be held that he contemplated that it was at the risk of the venture, and those who saw fit to extend credit to it had the right to look to the assets invested

for the payment of their debts. While doubtless the directions of the will as to the continuation of the business did not make the estate a continuing copartner with the sons, nevertheless, where a partner by will directs that his share of the capital and assets be not withdrawn from the firm for a specified period, or until a specified contingency and remain meanwhile under the control of the surviving partners as survivors, the capital and assets thus continued in the business are liable for the debts and losses of the business. *Ex parte Garland,* 10 Ves. Jr. 110; *Owen* v. *Delamare,* L. R. 15 Eq. 134; cited in footnote to *Hooley* v. *Gieve,* 9 Abb. N. C. 8.

In *Costello* v. *Costello,* 209 N. Y. 252, Judge Collin said in discussing the provisions of the will then under consideration: " The testamentary provision for the continuance of the trust  estate in the partnership business after testator's death did not create new firms or constrict the title or rights of the surviving partners. It permitted the surviving partners as such to continue the business for the benefit of the estate and themselves, using the capital and share of the deceased partner therein until the trustees thought fit to extract it *and made it liable for the debts meanwhile contracted as well as those existing at testator's death.*"

In the case of *Adams & Co.* v. *Albert,* 155 N. Y. 356, a retiring partner allowed his unliquidated interest to be continued in the business of the new firm. Judge O'Brien in his opinion said: " The principle to be deduced from the elementary books and the adjudged cases, which applies to such a situation as the facts in this case disclose, is substantially this: When a retiring partner allows his unliquidated interest to be continued in the business of a new firm, the interest thus left becomes liable for the partnership debts subse-

quently incurred, as well as the prior debts." Citing *Willis* v. *Sharp*, 113 N. Y. 586; *Burwell* v. *Mandeville's Exrs.*, 2 How. (U. S.) 560; *Hoyt* v. *Sprague*, 103 U. S. 613; *Nerot* v. *Burnand*, 4 Russ. 247; *Payne* v. *Hornby*, 25 Beav. 280; Lindley on Partnership, 700–702.

Parsons in his work on Partnership, Vol. 2 (3d ed.), 537, says: " If therefore, the person, instead of permitting himself to be held out as a partner, permits his property to be held out as the property of the firm, and as forming a part of the foundation upon which its credit rests, the very same reason which held him personally in the first case with all his property, would now hold that part of his property permitted to appear as the property of the firm." See also *La Montagne* v. *Bank of New York*, 94 App. Div. 219, 232.

The law as laid down in the cases above referred to when applied to the facts of this case compel the court to reach these conclusions.

*First.* That the testator's interest in the copartnership business of M. Zeis & Sons was alone at the risk of the business, and the creditors of that concern cannot look to the general estate. *Second.* That such interest of the testator is liable to creditors of the concern for the payment of the copartnership debts whether such debts were contracted prior or subsequent to the death of the testator. *Third.* That until such debts are paid the legatees under the will have no right to demand the payment of their legacies, and inasmuch as the fund in court will be insufficient to pay the business creditors in full, they cannot participate in the distribution of the fund.

Counsel for the legatees contend that the legacies given by the will are made payable out of the business and therefore are made an equitable charge thereon, and that such legatees become creditors of

the business and entitled to share with other creditors in the distribution of the firm assets.

In a sense the legacies mentioned are a charge against the business, but are not a charge superior to or equal to that of general creditors, but subordinate to their claims, and to be paid only after the claims of creditors have been satisfied. The testator's interest in the business was only seven-ninths thereof after all debts of the business had been paid, and the provisions for the benefit of his daughters made by his will are simply an equitable charge against the testator's net interest after the payment of all proper indebtedness of the business. The situation is not changed because the testator, instead of directing the immediate payment of these legacies after his death, saw fit to direct the continuance of the business enterprise, and the payment of the legacies at any time within eight years, when the financial condition of its affairs would permit.

All the equities of the case favor creditors whose loans and advances, whether of money or material, added to the assets of the concern, and enabled the business to proceed in accordance with the testator's directions.

The Manufacturers and Traders' National Bank contends that its claim or debt is entitled to priority of payment over debts contracted by the business subsequent to the death of the testator. The evidence shows that at the time of the death of Michael Zeis, the firm of M. Zeis & Sons was indebted to the bank, upon notes for some $82,000. This indebtedness has been reduced somewhat until the present indebtedness is about $55,500. Of this indebtedness of $55,500, $6,302.75 is represented by notes accepted by the bank on transactions entirely independent of the original indebtedness and taken subsequent to the death

of Michael Zeis. The balance, however, is represented by notes taken to renew in whole or in part notes held by the bank at the time of the testator's death. The bank takes the position that the acceptance of these renewal notes did not effect a novation of the original claim, but the renewal notes simply represent the old and original debt, which was never paid, and therefore the bank is entitled to payment in preference to any claim of the legatees, devisees or subsequent creditors.

Whether there was or was not an actual or legal novation of the original debt by the taking of renewal notes made by the survivors is not to the mind of the court controlling as to the question here involved.

The precise question was decided at the General Term of the old Superior Court of Buffalo in the case of *Smith* v. *Howard,* 20 How. Pr. 121, where it was held that where one of three copartners sold his interest to the other two, who continued the business and then failed, making a general assignment providing for the *pro rata* payment of the debts of the old and new firm, that the creditors of the old firm had no superior equity in the partnership property of the old firm in the hands of the new firm or their assignee.

The rule of law governing cases of this kind and the principles on which it is based are stated in the case of *Case* v. *Beauregard,* 99 U. S. 119–124, where Mr. Justice Strong, commenting upon the rights of copartners in a suit involving the marshalling of assets, said: "The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the

partners have as between themselves, and in certain circumstances, it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of creditors of its several members. This equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective through him. Hence, if he is not in condition to enforce it, the creditors of the firm cannot be." To the same general effect is the case of *Fitzpatrick* v. *Flannagan*, 106 U. S. 648–654.

The rule of law enunciated in the two cases in the United States Supreme Court above cited was recognized in *Saunders* v. *Reilly*, 105 N. Y. 12–19, and *Dexter* v. *Dexter*, 43 App. Div. 274–276.

To apply the principles above enunciated to the claim of the Manufacturers and Traders' National Bank, we find that Michael Zeis did not exercise the right vested in him to have the firm affairs liquidated and the debts paid from the assets of the firm, but by his will in substance directed the continuance of the business by his sons as successors. These provisions by will were tantamount to an express waiver on his part of the right to have the firm affairs liquidated and the debts paid, and as the creditors' right is a derivative one in the creditors and not enforceable in their own right, any equitable lien they might otherwise have had no longer exists; and they cannot be held to have an equitable lien on the firm assets in preference to creditors who became such subsequent to the death of Michael Zeis, but must share in the distribution of the firm assets *pro rata* with such subsequent creditors. The cases of *Miller* v. *Estill,* 5

Ohio St. 508, and *Thayer* v. *Humphrey,* 91 Wis. 276, hold the same doctrine.

Beyond the strict legal questions presented by the case now under consideration, we think the facts present strong equitable reasons why the bank should not be paid in preference to the other claims of creditors against the business.

Michael Zeis died leaving the will in question with the provisions in it in reference to the continuation of the business. The bank knew of his death and of the will and must be presumed to have known of the legal force and effect of its provisions.

Zeis died on November 30, 1915. For some two and a half years this business was in fact continued by his sons as successors, and new debts and obligations were incurred in the regular course of business. The notes held by the Manufacturers and Traders' National Bank, at the time of Michael Zeis' death, were from time to time renewed in part, and part paid. These renewal notes were signed by the successors in the same firm name of " M. Zeis & Sons " under which name the sons continued the business. Doubtless, the debt to the bank was reduced in part at least by reason of moneys realized from the continued operation of the business so that the credit obtained from the new creditors contributed to the reduction of the concern's indebtedness to the bank. Under such circumstances, we think it would be inequitable for the bank as against other creditors to be paid in preference to them.

In the case of *Dalton* v. *Humphreys,* 242 Fed. Repr. 777 (C. C. A.) practically the same questions were up for adjudication as those presented here.

The court said: " It goes without saying that creditors of the old firm, at the time of H. C. Harris' death, had full right to require the business to be wound up and the partnership property applied to the

payment of their debts. But they took no steps to
that end. Without protest or objection they allowed
the new firm to take up the business and carry it on
for more than two years; there was no dissent until
after the bankruptcy. In the circumstances, this long
acquiescence, manifested at least by non action, raises
a strong presumption that the new firm succeeded
the old firm, taking over its assets and assuming its
liabilities with the knowledge and consent of the
former creditors    *    *    *    This being so, it appears
plain to us that a few creditors of the old firm, whose
debts remain unpaid, should not be permitted to upset
an arrangement to which they presumably consented
and at the time was undoubtedly deemed best for all
concerned.''

We, therefore, are forced to the conclusion that the
Manufacturers and Traders' National Bank is not
entitled to any preference but must share *pro rata* with
other creditors in the distribution of the firm assets.

Certain of the defendants raise questions touching
the payments made by the firm of M. Zeis & Sons to
Walburga Zeis, the widow of the testator. By his will,
the testator gave to his widow the use of his residence
for life and then directed *'' My Executors hereinafter
named to pay her the sum of Fifty Dollars* ($50.) *for
weekly maintenance,''* etc. This weekly payment of
fifty dollars the executors of the will never themselves
paid, but the sons as successors of the firm of M. Zeis
& Sons made the payments to her from the funds of
the firm, and charged these payments on the books of
the concern to the labor account of the business.
These payments continued to be made until the
appointment of the receiver of the firm business, and
after such appointment the receiver continued the
weekly payments to the widow, until he has paid from
the funds in his hands the sum of about $1,300. The

creditors of the business insist that the payments both before and after the appointment of the receiver were unauthorized and illegal, and ask that the amounts' so paid should be refunded by the parties making and receiving the same. On behalf of the widow, it is urged that she was compelled or did in fact surrender her dower interest in the real property of the firm and equitably should not be required to make good the amounts paid her under the circumstances of the case. It is perfectly manifest that the surviving members of the firm of M. Zeis & Sons were under no legal obligations to make any payments whatever to the widow. The testator made to his sons a specific devise and bequest of the business of M. Zeis & Sons from which were to be paid certain legacies given by the 3d, 4th, 5th, 6th and 7th paragraphs of the will. These bequests were the only ones required to be paid from the business. The provision for the widow is contained in the " eighth " paragraph of the will, and is not included among the bequests to be paid by the sons from the business. On the contrary, the will directs the fifty dollars per week to be paid by the executors of the will, neither of whom were members of the firm of Zeis & Sons. Out of what funds or property the testator intended this amount was to be paid, it is hard to discover, because the testator at his death left little or no personal estate outside his interest invested in the firm of M. Zeis & Sons. The sons, however, as survivors of said firm, did seem to assume the duty of making weekly payments for their mother. The fact that these payments were charged to labor, however, would indicate that they must have known that they were not legitimate charges against the business, but were made for the purpose of providing their mother with means of living, according

to the standard expressed in the will of their father. It was, doubtless, a praiseworthy action on their part had the business prospered, but the filial and considerate acts of the sons were nevertheless to the prejudice of the creditors of the firm and cannot be deemed to cure the illegality of the transaction if such it was. I think it safe to assume that the payments made to Walburga Zeis were purely voluntary on the part of her sons, in substance and effect donations made by grateful sons to the maintenance of their mother. There is no evidence that would warrant the conclusion that the mother knew or supposed such payments embarrassed the firm or tended to render it insolvent. The court is unable to find that there was any fraud or intent on her part to cheat or defraud creditors. While these payments were unauthorized, nevertheless that fact does not, it seems to us, give a cause of action against the mother or justify a decree or judgment against her for the amount so received. Suppose the firm had made a donation to some charity. We do not think creditors could compel the charity to refund the donation made although in so doing the firm were unmindful of the rightful claims of creditors. We think, under the circumstances of this case, the creditors have no cause of action against the widow. In the absence of fraud on the widow's part we do not think she is legally liable to refund.

On the other hand we do not think the plea made in her behalf of having relinquished her dower in the firm real estate is a good plea in her behalf. The mill property seems to be recognized by all parties as firm property. Her dower right, if any, was and is subject to the payment of the firm's debts.

Real estate purchased by a firm with its funds for partnership purposes is regarded in equity, so far as

the firm and its creditors are concerned, and so long as the partnership affairs remain unsettled, as personal property. *Greenwood* v. *Marvin,* 111 N. Y. 423; 14 Cyc. 903; *Simpson* v. *Simpson,* 41 App. Div. 449; *Darrow* v. *Calkins,* 6 id. 28.

It is only after partnership debts have been paid and the equities of the partners adjusted that dower attaches and becomes effective. In this case the assets of the firm are inadequate to pay and discharge the firm indebtedness, and we must hold that the widow of the testator had and has no dower interest in the firm real estate of any value whatever. As to the payments made to the widow by the receiver after his appointment, it would seem that they were clearly illegal and unauthorized. On an accounting by the receiver, he doubtless should be charged with these payments. But the receiver is not a party to this action. He is not now before this court in any such proceeding. It will be sufficient when he renders his account and seeks a discharge for parties to then raise and have the question of his liability disposed of.

The testimony in this case shows that the state transfer tax on the legacies left by Michael Zeis, the testator, has never been paid but that the matter fixing the amount has been reopened by the surrogate. The value of the bequest of the planing mill business to John and Edward Zeis to be continued by them should be finally ascertained and determined, and the amount of said tax, when ascertained, should be first paid out of the funds in the hands of the receiver as the statute imposes a lien on the partnership property bequeathed and devised by the testator. A sufficient amount should be retained by the receiver to meet the amount of such tax.

Objections are raised to the claim of Mr. Kilhoffer for legal services rendered the firm of M. Zeis & Sons.

After carefully considering this matter, I am of the opinion that $3,000 will reasonably compensate the claimant for such services and accordingly adjust his claim to that amount.

After the payment of the proportionate amounts provided upon a distribution of the assets in the receiver's hands, the claimants to the fund will, of course, have a right of action against John Zeis and Edward Zeis as survivors, etc., for any unpaid balance owing them and nothing herein is to be deemed as in any way abridging that right. A decision and judgment may be prepared in conformity with the views above expressed.

Judgment accordingly.