[No. 25374. Department Two. March 27, 1935.]

*In the Matter of the Estate of* WALTER MARTIN FLYNN, *Deceased.*

JAMES G. MULROY, *as Assignee, Appellant,* v. PEARL I. FLYNN, *as Administratrix, Respondent.*[1]

*L. C. Brodbeck* and *James G. Mulroy,* for appellant.
*John F. Reed* and *W. M. Charleston,* for respondent.

STEINERT, J.—An action in equity for an accounting by the administratrix of a partnership estate and also

[1]Reported in 43 P. (2d) 8.

of an individual estate was consolidated with a probate proceeding wherein objections to the final account of the administratrix were filed. An accounting was allowed and had upon the objections filed in the probate proceeding. After evidence had been taken, findings of fact were made, from which certain conclusions of law were drawn. Based thereon, a decree was entered approving the final account as corrected, making certain allowances for services rendered, and ordering distribution of the remainder of the partnership estate. Deeming himself aggrieved, the plaintiff in the equity action, who was also the objector in the probate proceeding, has appealed from the decree, bringing to this court a formal transcript of the record, but not including a statement of facts.

By his assignments of error, the appellant makes but one contention; namely, that the findings of fact do not support the conclusions of law or the decree of distribution.

This being an action and proceeding to obtain an accounting of partnership assets, it is of equitable cognizance and, as such, is triable *de novo* in this court. *Mulready v. Shelton,* 140 Wash. 233, 248 Pac. 416.

An approach to the question presented upon this appeal must be had with certain well established rules in mind: (1) In equity cases, triable *de novo,* findings of fact, though permissible, are not essential or necessary to support a decree; (2) in such cases, the decree is entitled to every presumption necessary to sustain it, in the absence of an affirmative showing in the findings that the facts necessary to sustain the decree do not exist; (3) even though the findings are indefinite, uncertain, and incomplete, a decree presumably based upon facts not disclosed by the record can not be reversed when the evidence is not brought be-

fore the reviewing court. These rules are amply supported by the following cases: *Thompson v. Emerson,* 55 Wash. 138, 104 Pac. 201; *Harbican v. Chamberlin,* 82 Wash. 556, 144 Pac. 717; *Smith v. Dement Brothers Co.,* 100 Wash. 139, 170 Pac. 555; *Rich v. Kruger,* 130 Wash. 656, 228 Pac. 1012; *Wilkeson v. Rector, etc., St. Luke's Parish,* 176 Wash. 377, 29 P. (2d) 748; *Incorporated Investors v. Bridges,* 178 Wash. 321, 34 P. (2d) 881. As already stated, there is no statement of facts in the record before us.

Turning, then, to the findings made by the trial court, we give their substance, as follows: In November, 1928, Walter Martin Flynn, of Seattle, and Cantor & Angel, Inc., a corporation, of New York City, entered into a partnership agreement to engage in the business of buying, selling and dealing in raw furs in the city of Seattle. For this enterprise, Cantor & Angel, Inc., advanced the sum of ten thousand dollars, and Flynn advanced the sum of $1,117.91. Flynn was made the sole and exclusive manager of the partnership, and, as such, conducted its business and had in his possession and control all of its property assets. Cantor & Angel, Inc., remained at all times merely a dormant partner.

The partnership agreement continued until dissolved by the copartners on October 31, 1930, at which time Flynn was overdrawn upon his account in the sum of $1,549.74, but at the same time, there was owing to him a year's salary, amounting to $3,600. The assets of the partnership at that time consisted of cash, accounts receivable, and a quantity of raw furs. These furs had been pledged to Seattle Fur Exchange to secure advances made by it and then totaling $7,360.18, which, together with other claims amounting to $253.99, were the only obligations owing by the partnership at that time. No notice of dissolution was given to any person who had previously dealt with the copartnership.

After the termination of the partnership agreement, Flynn retained the exclusive possession and control of all the assets of the copartnership, for the purpose of winding up, liquidating and settling its affairs. At the same time, and without any break in the continuity of the business, Flynn engaged in and carried on, for his own account, the same kind of business, conducting it under the same name and in the same manner as those in which he had formerly conducted the business of the copartnership.

In the process of winding up the partnership affairs, Flynn sold a portion of the raw furs on hand, but under pledge, for the sum of $4,474.10, and thereby reduced the indebtedness of the copartnership to Seattle Fur Exchange to $2,886.08.

During November and December, 1930, while Flynn was engaged in business solely for himself, but while also winding up the affairs of the copartnership, he purchased other furs from various parties with whom the copartnership had formerly dealt, and became indebted to such parties for the purchases made by him. None of those parties were ever advised of the dissolution of the partnership, nor, for that matter, does it appear that they ever knew of its existence.

Mr. Flynn died intestate in December, 1930, and shortly thereafter, his widow, the respondent herein, was appointed, and qualified, as administratrix of both the individual estate and the partnership estate, and took over possession of all the assets of both estates. Notice to creditors of the individual estate only was given.

In due course of time, the administratrix filed her final account, which showed the following: The balance remaining in the partnership estate, after allowing Mr. Flynn a credit of three hundred dollars for ser-

vices rendered and expenses incurred by him in the work of winding up the partnership, amounted to $4,302.65; the balance remaining in the individual estate amounted to $737.39; or, a total in both of $5,040.04. Claims totaling $3,541.19 were filed, allowed, and paid. Of this amount, $3,019.69 was for debts contracted by Mr. Flynn in the purchase of furs after the partnership had been dissolved. By the payment of all claims, the individual estate was exhausted, and there remained of the partnership estate only $1,192.70.

The administratrix was allowed the sum of four hundred dollars for her services, and her attorney was allowed the sum of five hundred dollars for his. Deducting the amount of these allowances from $1,192.70, there was left the sum of $292.70, which was ordered to be paid to the appellant, who was the assignee of Cantor & Angel, Inc.

It is first contended by the appellant that the court had no right to approve the payment of any part of the individual debts out of the partnership assets.

Upon this contention, appellant advances several propositions, among them being: (1) That dissolution of partnership terminates the general agency and operates as a revocation of all power to create new obligations; (2) that the trust fund doctrine does not apply to partnerships; (3) that only persons extending credit to the partnership are entitled to notice of dissolution; and (4) that persons dealing with a partnership, but having no knowledge that a partnership, in fact, existed, are not entitled to notice of dissolution.

It may be conceded that some of these propositions are, in a general sense, correct statements of the law; and for the purposes of the argument, we may concede that all of them are such. But they are, after all, only general statements and do not control the present case.

Here we have a state of facts which invokes the application of certain rules and principles that are founded in reason and justice and seem to be well settled by authority.

Cantor & Angel, Inc., as a dormant partner, permitted Flynn to have sole and exclusive possession and control of all the assets of the partnership and complete management of its affairs, not only during the period of the existence of the partnership agreement, but also after it had been terminated. While the partnership was in existence, Flynn was permitted to conduct the business as though it were his own. After the termination of the partnership, Flynn continued the conduct and operation of the business just as it had been conducted and operated before. There was no change whatever in its continuity or aspect, and Cantor & Angel, Inc., did nothing to see that subsequent creditors were not misled by appearances. To the contrary, it permitted the property in which it had an unliquidated interest to be retained and held out as the property of Flynn, thereby inviting others to do business with him and extend credit to him upon the strength of his apparent financial standing. Those who thereafter dealt with, and extended credit to, him had no reason to believe that the assets of the business had been depleted because of any changed relationship or ownership. They had no way of knowing that what they believed was his property, was not his entirely.

The question before us is not one of priority between partnership and individual creditors, nor whether Cantor & Angel, Inc., would be personally liable for the subsequent debts of Flynn. The question is whether Cantor & Angel, Inc.'s interest in property which it permitted Flynn to hold out as ostensibly belonging to him, should now be relieved of liability for debts contracted by him.

■ Where one partner is permitted to assume sole charge and superintendence of the property of an undisclosed or dormant partnership and to deal with it as his own, the property, though actually belonging to the partnership, is, so far as innocent third persons are concerned, to be regarded as the sole property of the active partner, and the dormant partner is estopped from asserting his real interest therein as against those who have, in good faith, acted upon the appearance of the active partner's sole ownership. *Cammack v. Johnson,* 2 N. J. Eq. 163; *Swofford Bros. Dry Goods Co. v. Diment,* 132 Mo. App. 616, 111 S. W. 1196; *Willey v. Crocker-Woolworth National Bank,* 141 Cal. 508, 75 Pac. 106; *Taylor v. Cummer Lumber Co.,* 59 Fla. 638, 52 So. 614; *White v. Farnham,* 99 Me. 100, 58 Atl. 425, 105 Am. St. 261; 47 C. J. 901, 910.

This court has followed that rule. In *Hanson v. Roesch,* 104 Wash. 257, 176 Pac. 349, it was said:

"The rule is elementary that, where a dormant partner permits the business world to believe that the ostensible partners are the owners of the business, he is estopped from claiming to the contrary against those who have in good faith acted upon such appearance, and cannot be heard to insist that, under such circumstances, a creditor has not the right to set off his debt against such partnership."

■ It is also the rule that a retiring partner who permits property in which he has an unliquidated interest to remain in the possession of his former partner, or of a new firm, and allows it to be held out as part of the foundation on which the credit of the continuing partner, or of the new firm, rests, is estopped from subsequently resisting its application to debts thereafter incurred by the continuing partner or by the new firm. *Adams & Co. v. Albert,* 155 N. Y. 356, 49 N. E. 929, 63 Am. St. 675; *Kilhoffer v. Zeis,* 109 Misc. 555, 179 N. Y. Supp. 523; Parsons on Partnership,

(4th Ed) § 397, pp. 493-4; 47 C. J. 1035; 20 R. C. L. 982, § 216. See, also, Lindley on Partnership, 808 *et seq.*

In 2 Parsons on Partnership (3d Ed.) 537, it is said:

"If, therefore, the person, instead of permitting himself to be held out as a partner, permits his property to be held out as the property of the firm, and as forming a part of the foundation upon which its credit rests, the very same reason which held him personally in the first case with all his property, would now hold that part of his property permitted to appear as the property of the firm."

In this connection, appellant makes some contention that the findings do not disclose that the individual creditors extended credit to Flynn in reliance upon his apparent ownership of the partnership property. We doubt that the findings are subject to that criticism, but if they are, they are merely indefinite and incomplete in respect of the particular fact. The findings certainly do not affirmatively show that the individual creditors did not place reliance upon Flynn's apparent ownership of the property. Under the rule announced in the early part of this opinion, the decree is entitled to every presumption necessary to sustain it, in the absence of an affirmative showing in the findings to the contrary, where, as here, the record does not contain a statement of facts.

Appellant next contends that the court had no right to allow Flynn a credit of three hundred dollars for services performed by him in November and December, 1930, in winding up the partnership affairs. While it is the general rule that one partner may not have compensation from the partnership of which he is a member, for services rendered by him, there are exceptions to the rule. Where one partner has the entire management and control and is devoting his

whole time to the partnership business, and the other partner renders no service to the business and is not in attendance upon it, these circumstances may give rise to an implied contract that the active partner is to be compensated for his services. *In re Levy's Estate,* 125 Wash. 240, 215 Pac. 811; 1 Rowley, Modern Law of Partnership, §§ 354, 667.

But in this case, there was an express agreement with reference to Flynn's compensation for conducting the partnership business while it continued. He was allowed three hundred dollars per month. Since the duties of winding up the business of the partnership were cast upon him, it would naturally follow that he would be expected to receive a reasonable compensation therefor. The amount does not appear unreasonable. In any event, there being no statement of facts in the record, we would not be justified in disallowing the credit, because, for aught we know, there may have been an express agreement between the parties that he should receive a reasonable compensation for such services.

Finally, appellant contends that the court erred in making the allowances to the administratrix and her attorney for services rendered the estates. The allowances appear to us to be both proper and reasonable, and the state of the record does not permit us to hold to the contrary.

The decree is affirmed.

MILLARD, C. J., MITCHELL, HOLCOMB, and BLAKE, JJ., concur.